```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/5/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

JEREMIAH REDSTONE, M.D., individually and
as attorney-in-fact on behalf of Empire
beneficiary L.P., and JOHN PAUL TUTELA,
M.D., individually,

                                          Plaintiffs,

-against-

EMPIRE HEALTHCHOICE HMO, INC. and
EMPIRE HEALTHCHOICE ASSURANCE, INC.,

                                          Defendants.

-------------------------------------------------------------- X

23-CV-2077 (VEC)

OPINION

**VALERIE CAPRONI, United States District Judge:**

Plaintiffs Jeremiah Redstone and John Paul Tutela (collectively, the "Plaintiffs") commenced this action seeking to recover alleged underpayments for medical services provided to L.P., who was enrolled in a health insurance plan (the "Plan") administered by Defendants Empire Healthchoice HMO, Inc. and Empire Healthchoice Assurance, Inc. (collectively, "Empire"). Plaintiffs assert claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and New York State law. Comp. ¶ 1, Dkt. 1.

Empire moved to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Defs. Mot., Dkt. 12. Plaintiffs opposed the motion. *See* Pl. Mem. of Law, Dkt. 26. For the following reasons, Empire's motion to dismiss is GRANTED.

## I. BACKGROUND[1]

L.P.[2] is a 61-year-old woman who was diagnosed with breast cancer and is a beneficiary of a health care plan administered by Empire. Compl. ¶¶ 16–17. Plaintiffs Redstone and Tutela are board-certified plastic surgeons with medical practices in New York and New Jersey. *Id*. ¶¶ 4–5. The Complaint alleges that L.P. executed an assignment of benefits to Plaintiffs and a power of attorney authorizing Redstone to file this action to recover benefits owed under the Plan. *Id*. ¶¶ 7, 18.

### A. Medical Care

In March 2020, Plaintiffs, assisted by a physician's assistant, performed breast reconstruction on L.P. following a bilateral mastectomy. *Id*. ¶¶ 17, 20. Prior to the procedure, Empire had authorized L.P.'s surgery. *Id*. ¶ 24. The Authorization clearly identified Redstone as an out-of-network provider and warned L.P. that she may pay much more than she would pay if she used an in-network provider and that those costs may be in excess of what Empire would pay. Declaration of Frances Schultz ("Schultz Decl.") Exhibit B at 2, Dkt. 15–2. Of the $671,723 Plaintiffs billed for the surgery, Empire covered $26,099.20, leaving a balance due of $645,623.80. *Id*. ¶¶ 26–31.[3]

In August 2020, Redstone performed the second stage of L.P.'s breast reconstruction. *Id*. ¶ 32. As before, Empire authorized the procedure, again warning L.P. that her surgeon was an

---

[1] The well-pled facts alleged in the Complaint are assumed true for purposes of evaluating Defendants' motion to dismiss. *See Nielsen v. Rabin*, 746 F.3d 58, 61 (2d Cir. 2014). The facts are taken from the complaint and any documents incorporated by reference therein.

[2] To maintain Patient L.P.'s privacy and to comply with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the parties abbreviate Patient L.P.'s name in the Complaint and briefing.

[3] Using the estimate provided in the Complaint that the surgery took 8 to 12 hours, Redstone's bill would translate to a rate of between $19,503.50 and $29,255.25 per hour. Tutela's bill was only slightly less. Even the physician assistant's billing rate was jaw-dropping: $17,506 to $26,260 per hour.

2

out-of-network provider who may charge more than what Empire would cover. Schultz Decl. Exhibit C at 1, Dkt. 15–3. Of the $138,451 Redstone charged for his services, Empire paid $7,216.77, leaving a balance due of $131,234.23. *Id.* ¶¶ 34, 37.

### B. Insurance Coverage

Plaintiffs are out-of-network providers with Empire, which is a large health insurance company. *Id.* ¶¶ 9–12. The allegations in the Complaint are confusing and conclusory with regard to the provisions of the Plan. According to the Complaint, for reasons that are inadequately alleged,[4] Empire was obligated to grant "an in-network exception" to Plaintiffs and to reimburse them in full at their billed rate for the medical services they provided to L.P. *Id.* ¶¶ 54–55. Perhaps recognizing that those allegations were not factually supported, the Complaint also alleges that even if Plaintiffs were not entitled to an in-network exception, Empire was obligated to reimburse out-of-network providers based on "available data resources of competitive fees" in the area in which the services were provided. *Id.* ¶ 58. The Complaint alleges that the main source for such fees is the FAIRHealth databases, but, according to the Complaint, Empire's reimbursement rates were far below the amounts reflected in those databases.[5] *Id.* ¶¶ 59–60.

The Complaint alleges that the medical services Plaintiffs provided to L.P. were rendered outside of Empire's service area and were provided through Empire's BlueCard program,

---

[4] Plaintiffs allege that Defendants had no in-network surgeons who could perform L.P.'s surgery. Compl. ¶ 51. That allegation is entirely conclusory and strikes the Court as implausible. Nevertheless, from that factually dubious premise, Plaintiffs allege "[u]pon information and belief" that the Plan was, therefore, obligated to reimburse them as out-of-network providers "under an in-network exception at the physicians' billed charges." Compl. ¶ 54. Plaintiffs do not cite to any provision of the Plan to support that allegation and allege no facts to support their conclusion that there was not a single in-network surgeon capable of performing L.P.'s surgery.

[5] The Complaint does not allege the amounts reflected in the FAIRHealth databases for this surgical procedure. The Complaint also alleges that the "amount reimbursed by Empire for [Plaintiffs'] services are . . . far below the 85-90th percentile as represented by the terms of the Plan." Compl. ¶ 60. The Complaint cites to no provision of the Plan and does not disclose to what the "85-90th percentile" relates.

pursuant to which Empire relies upon Horizon Blue Cross and Blue Shield ("BCBS") for claims administration and processing. *Id*. ¶¶ 61–62. Plaintiffs allege that Empire must rely on Horizon BCBS's payment methodologies, and that Empire was required to pay claims at amounts paid to out-of-network providers by Horizon BCBS. *Id*. ¶ 63. The Complaint alleges that BCBS "has paid substantially greater amounts for these services than was paid on these claims" and that those higher reimbursement rates "represent the reasonable and customary rates in New Jersey." *Id*. The Complaint never alleges what those rates are or to whom such higher rates were paid.

According to Plaintiffs, they interpret unspecified provisions of the Plan and representations purportedly made on Horizon BCBS's website to require: (1) Empire to pay non-participating out-of-service area providers based on the local Horizon BCBS's non-participating provider fee schedule/rate; (2) payments from Empire to be consistent with obligations imposed by local law; (3) non-participating providers to be paid using a fee schedule based on a percentage of values determined by either Medicare or FAIRHealth; (4) if reimbursement is determined using information from the Centers for Medicare and Medicaid Services ("CMS"), then the claims administrator will update such information no less than annually. *Id*. ¶ 64.

Plaintiffs allege that they exhausted their administrative remedies with Empire and, if they did not, they were excused from doing so because it would have been futile. *Id*. ¶¶ 66–68.

## DISCUSSION

### II.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). The Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Although the Court is generally confined to "the allegations contained within the four corners of [the] complaint," *Carlin v. Davidson Find LLP*, 852 F.3d 207, 212 (2d Cir. 2017), it may consider materials attached to the complaint or incorporated by reference, documents in Plaintiff's possession or of which Plaintiff had knowledge and relied on in bringing suit, as well as matters appropriate for judicial notice, *see DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

### III.   Plaintiffs' ERISA Claims

ERISA section 502(a)(1)(B) provides that a participant or beneficiary may bring a civil action "to recover benefits due to h[er] under the terms of h[er] plan, to enforce h[er] rights under the terms of the plan, or to clarify h[er] rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Counts I through III of the Complaint assert violations of ERISA based on Defendants' alleged failure adequately to reimburse Plaintiffs for the surgical services provided to L.P. Compl. ¶¶ 71–99.

Plaintiffs maintain they have standing to bring this claim based on the assignment of benefits and the power of attorney that L.P. executed, authorizing Plaintiff Redstone to enforce her benefits. *Id*. ¶¶ 18–19. Empire argues that Plaintiffs lack standing to sue under ERISA, and in support of its motion to dismiss, it submitted a copy of the Plan governing the purportedly assigned claims that Plaintiffs seek redress for. *See* Schultz Decl. Ex.

A (the "Plan"), Dkt. 15–1.  Empire contends that the Plan contains an unambiguous anti-assignment clause that nullifies the assignment that Plaintiffs allegedly received from L.P.  Defs. Mem. of Law at 8, Dkt. 13.  Absent a valid assignment, Empire argues, all of Plaintiffs' ERISA claims must be dismissed for failure to state a claim because Plaintiffs lack standing.  *Id.* at 6–10.  Empire also argues that the power of attorney executed by L.P. is ineffective to confer standing on Redstone.  *Id.* at 9–10.

ERISA expressly provides that only "a participant or beneficiary" may bring a section 502(a)(1)(B) claim, 29 U.S.C. § 1132(a)(1), and it is well-settled that "[h]ealthcare providers are not beneficiaries or participants under ERISA," *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice Hmo, Inc.*, No. 13-cv-6551, 2016 WL 2939164, at *3 (S.D.N.Y. May 19, 2016) (citing *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 257–58 (2d Cir. 2015)).  The Second Circuit has, however, recognized a "narrow exception to the ERISA standing requirements" that "grants standing only to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care."  *Simon v. General Electric Co.*, 263 F.3d 176, 178 (2d Cir. 2001) (citing *I.V. Servs. of Am., Inc. v. Trs. of Am. Consulting Eng'rs Council Ins. Tr. Fund*, 136 F.3d 114, 117 n.2 (2d Cir. 1998)).

If an ERISA plan has a valid anti-assignment clause, acceptance of an assignment is ineffective — "a legal nullity."  *Neurological Surgery, P.C. v. Aetna Health Inc.*, 511 F. Supp. 3d 267, 282 (E.D.N.Y. 2021) (citing *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 147 (2d Cir. 2017)).  "Under federal common law, which governs construction of the ERISA plans, unambiguous anti-assignment clauses serve to void patients' assignments of benefits and other legal obligations under ERISA."  *Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co.*, No. 14-cv-2495, 2016 WL 4382709, at *6 (S.D.N.Y. Aug. 16, 2016).  "Thus, a healthcare provider who has attempted to obtain an

6

assignment in contravention of a plan's terms is not entitled to recover under ERISA." *Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 352 (S.D.N.Y. 2013).

In the face of an unambiguous anti-assignment clause, some courts have held that an assignee plaintiff may still have ERISA standing if the benefits administrator either waived or is estopped from relying on that provision. *Merrick v. UnitedHealth Grp. Inc.*, 175 F. Supp. 3d 110, 120 (S.D.N.Y. 2016); *Ludwig v. NYNEX Serv. Co., a wholly owned subsidiary of NYNEX Corp.*, 838 F. Supp. 769, 796 (S.D.N.Y. 1993) ("the doctrine of waiver is applicable to ERISA cases as a matter of federal common law") (citation omitted).  Waiver requires a clear manifestation of an intent to waive the provision. *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.,* 448 F.3d 573, 585 (2d Cir. 2006).

When deciding a motion to dismiss, courts generally do not "look beyond the complaint." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011). Courts do have discretion to consider "documents or information contained in [the] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint." *Env'tl Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (citation omitted). Because Plaintiffs had knowledge of the Plan when they commenced this suit and relied heavily on its purported contents when framing the Complaint, the Court may consider the Plan in deciding this motion. *See Neurological Surgery, P.C. v. Oxford Health Plans (NY), Inc.*, No. 18-cv-560, 2020 WL 13931876, at *3 (E.D.N.Y. Oct. 30, 2020).

The assignment provision of the Plan states:

> Except where Empire expressly indicates otherwise, in the case of services provided by an out of network provider, payments will always be made directly to you for services provided by the out of network provider. Payments may also be made to, and notice regarding the receipt and/or adjudication of claims, an Alternate Recipient, or that person's custodial parent or designated representative.

7

> . . . You cannot assign your right to receive payment to anyone else, except as required by a "Qualified Medical Child Support order" as defined by ERISA or any applicable state or Federal law. Any purported assignment of benefits shall be void. Any purported assignee of benefits shall acquire no rights by reason of any such purported assignment. . . . The coverage and any benefits under the Plan are not assignable by any Member without the written consent of the Plan, except as provided above.

Plan at 66–67.

Plaintiffs argue that the Plan's anti-assignment clause is ambiguous and contradictory, as the clause states that members of the Plan "cannot assign [their] right to receive payment to anyone else," but then also states that "the coverage and any benefits under the Plan are not assignable . . . without consent of the plan." Pl. Mem. of Law at 5 (citing *Neurological Surgery, P.C. v. Travelers Co.*, 243 F. Supp. 3d 318, 327 (E.D.N.Y. 2017) (plan language must unambiguously prohibit assignment to render attempted assignment ineffectual)). Plaintiffs argue that the Plan's failure to define what is required for written consent renders the provision ambiguous and, therefore, that the anti-assignment clause is unenforceable. *Id*.

Plaintiffs do not allege that the Plan consented in writing to the assignment. Instead, Plaintiffs claim that they have sufficiently pled that Empire waived the written consent requirement through its course of conduct. *Id*. at 6. The Complaint alleges that Empire "engag[ed] in regular interaction and communication" with Plaintiffs "over a prolonged period . . . without ever mentioning the existence of any anti-assignment clause." Compl. ¶ 80. Because Defendants did not object to Plaintiffs' asserted status as assignees until the start of this litigation, according to Plaintiffs, they have waived the anti-assignment provision. Pl. Mem. of Law at 8–9. Plaintiffs cite to *Neurological Surgery, P.C. v. Oxford Health Plans (NY), Inc.*, No. 18-cv-560, 2020 WL 13931876, at *3 (E.D.N.Y. Oct. 30, 2020) for support. *Id*. at 6–7. In that case, Judge Brown held that the plaintiff had stated a plausible claim that the defendant waived the anti-assignment clause through "a prolonged pattern of direct payments by the [d]efendant."

*Id*. at *8.  In response, Empire contends that it did not waive the anti-assignment clause through its conduct, as waiver requires "a clear manifestation of an intent . . . to relinquish [a] known right."  Defs. Mem. of Law at 10 (citing *Beth Israel Med. Ctr.*, 448 F.3d at 585).

The Court agrees with the Defendants that the anti-assignment provision of the Plan is unambiguous.  Plaintiffs' argument that the Plan does not articulate what is required for the Plan to consent to an assignment is silly: the Plan clearly required any consent to be in writing, and Plaintiffs have not alleged that there is a written consent.  As Judge Brown noted in *Neurological Surgery, P.C. v. Oxford Health Plans (NY), Inc.*, on which Plaintiffs rely heavily: "[t]he Second Circuit and district courts within the Circuit have ruled that with regard to clauses that require the benefit administrator's consent for an assignment, that in the absence of that consent, the clauses unambiguously prohibit assignments."  2020 WL 13931876 at *7.

The Complaint's allegations of waiver through "regular interaction and communication" are inadequate.  Compl. ¶ 80.  As noted above, the Complaint alleges only that Empire "engag[ed] in regular interaction and communication with the Provider Plaintiffs and their representatives over a prolonged period – prior to and after the claim forms were submitted – without ever mentioning the existence of any anti-assignment clause"; "authorized the Provider Plaintiffs to perform these services, communicated the benefits under the Plan to the Provider Plaintiffs, made direct payments to the Provider Plaintiffs and authorized the Provider Plaintiffs to act as L.P.'s designated representative to carry out any grievance, appeal or other external review of Empire's reimbursement decisions."  *Id*. ¶¶ 80–81.

Most courts in this district have rejected the argument that direct payments to a provider waives the anti-assignment clause when, as here, the plan permits the administrator, in its discretion, to pay providers directly.  *Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, No. 16-cv-5265, 2019 WL 1409806, at *10–11 (S.D.N.Y. Mar. 28, 2019) (citation omitted); *see also*

9

*Mbody Minimally Invasive Surgery*, 2014 WL 4058321, at *3 (citation omitted) ("Health insurance companies routinely make direct payments to healthcare providers without waiving anti-assignment provisions."). The other clearly alleged conduct – sending a copy of the pre-authorization letters to Plaintiffs and informing Plaintiffs of the benefits under the Plan simply do not allow the Court plausibly to infer that Defendants intended by those actions to waive the anti-assignment clause. Plaintiffs' final allegation in this regard, that Defendants authorized the Plaintiffs to act as L.P.'s representative "to carry out any grievance, appeal or other external review of Empire's reimbursement decisions," does not rescue Plaintiffs' claim because it is entirely conclusory.

Thus, while evidence of an administrator's course of conduct apart from direct payments, including communications and conduct regarding benefit appeals, can present a "closer question" as to waiver, *Merrick*, 175 F. Supp. 3d at 123, this Complaint fails to allege sufficient facts to raise even a "closer question" of waiver. The factual allegations in the Complaint regarding Defendants' alleged waiver are either innocuous or entirely conclusory; accordingly, Plaintiffs have not plausibly alleged that Empire intentionally waived the anti-assignment clause of the Plan. Because Plaintiffs have not alleged waiver of the anti-assignment clause, Plaintiffs have not adequately alleged that they have standing to bring any of the federal ERISA claims.[6] Thus, all of the federal claims must be dismissed.

Defendants argue that Plaintiffs should not be given leave to amend their complaint as they failed to take advantage of a prior opportunity to do so. Defs. Reply Mem. at 1 n.2, Dkt. 27;

---

[6] Plaintiff Redstone alleges that he obtained a power of attorney from L.P., which, along with the assignment of benefits, is sufficient to show that Plaintiffs were proper assignees of L.P.'s benefit claims. Pl. Mem. of Law at 4 n.4. "The grant of a power of attorney . . . is not the equivalent of an assignment of ownership; and, standing alone, a power of attorney does not enable the grantee to bring suit in his own name." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17–18 (2d Cir. 1997) (citation omitted). Because the Court has already held that the anti-assignment clause of the Plan is valid and unambiguous and that Plaintiffs have not adequately alleged Empire's waiver, L.P.'s power of attorney, on its own, does not confer standing on Redstone.

*see also* Dkt. 18.  Although the Court would have preferred for Plaintiffs to have amended their Complaint at that point if they could allege facts that would shore up their inadequate allegations of standing, the Court cannot say that there is no possibility that they can adduce facts adequate to allege waiver of the anti-assignment clause of the Plan.  Accordingly, the federal claims will be dismissed, but Plaintiffs will be given the opportunity to move for leave to file an amended complaint.

### IV. Plaintiffs' State Law Claims are Preempted

Plaintiffs assert five state law claims related to their ERISA claims: breach of contract (Count IV), breach of implied contract (Count V), unjust enrichment (Count VI), tortious interference (Count VII), and a third party beneficiary claim (Count VIII).  Empire argues that each of the state law claims should be dismissed because they are preempted by ERISA or for failure to state a claim.  Defs. Mem. of Law at 16–17.  The Court agrees that Plaintiffs' state law claims are expressly preempted.  Because the Court determines that dismissal is proper on the basis of preemption, the Court does not address whether Plaintiffs have plausibly alleged any state law claim.

ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute.  29 U.S.C. § 1144.  "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."  *Paneccasio v. Unisource Worldwide, Inc.,* 532 F.3d 101, 114 (2d Cir. 2008) (citation omitted).  ERISA preempts state laws that "provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee."  *Id.* (citation omitted).  ERISA also preempts state common law claims "that seek to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation

of a legal duty independent of ERISA." *Id.* (citation omitted).  A claim under state law is not independent of ERISA if the terms of a benefit plan are "an essential part" of the claim, and liability would exist only because of the administration of an ERISA-regulated benefit plan.  *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 213 (2004).

Plaintiffs' state law claims are preempted because they are not independent of the terms of the relevant ERISA plan.  "State laws, or actions pursuant to state law, that [are] preempted include: common law tort and contract actions asserting improper processing of a claim for benefits under an ERISA-covered benefit program."  *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir. 1989) (citation omitted).  In *Paneccasio*, the Second Circuit disposed wholesale of the plaintiff's state law claims because each claim was premised on the denial of benefits alleged to be due under an ERISA plan.  *See* 532 F.3d at 114.  The same is true of all of Plaintiffs' state law claims.

Count IV alleges that Empire breached its contract with L.P. by failing to timely and properly pay Plaintiffs for the covered surgical procedures, Compl. ¶¶ 100–06; Count V alleges that Empire breached an implied contract with Plaintiffs by failing to timely and properly pay Plaintiffs for the covered surgical procedures, Compl. ¶¶ 107–16; Count VI alleges that Empire has been unjustly enriched by retaining benefits that should have been paid to Plaintiffs under the Plan, Compl. ¶¶ 117–23; Count VII alleges that Empire interfered with Plaintiffs' contractual relationship with L.P., Compl. ¶¶ 124–27; and Count VIII alleges that Empire breached its contract with L.P. by failing to pay Plaintiffs as the intended third party beneficiaries of the contract,[7] Compl. ¶¶ 128–33.

---

[7]   In all events, Plaintiffs waived their third party beneficiary claim by failing to respond to Defendants' motion to dismiss that claim.  *Dreamtex, Inc. v. Alva Advance, LLC*, No. 22-cv-9248, 2023 WL 5390998, at *2 (S.D.N.Y. Aug. 22, 2023) (holding that a party's failure to oppose a particular argument in a motion to dismiss constitutes waiver of the issue).

None of Plaintiffs' state law claims would exist but for the existence of Empire's payment obligations under the ERISA plan, and liability and damages for each claim could not be ascertained without determining the Plan's coverage and payment terms.  All of the state law claims are, therefore, preempted and are dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Empire's motion to dismiss is GRANTED.  If Plaintiffs wish, they can move for leave to file an amended complaint not later than **March 29, 2024**.  Any such motion must include a red-lined version of their proposed amended complaint.

The Clerk of Court is respectfully directed to terminate the open motion at docket entry 12.

**SO ORDERED.**

**Date:  March 5, 2024**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**