```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/13/24
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
JEREMIAH REDSTONE, M.D., individually and :
as attorney-in-fact on behalf of Empire :
beneficiary L.P., and JOHN PAUL TUTELA, :
M.D., individually, :
                                                         : 23-CV-2077 (VEC)
                                                         :
                                     Plaintiffs, :         OPINION
                                                         :
                  -against- :
                                                         :
                                                         :
EMPIRE HEALTHCHOICE HMO, INC. and :
EMPIRE HEALTHCHOICE ASSURANCE, INC., :
                                                         :
                                        Defendants. :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

      This is the second attempt by Plaintiffs Jeremiah Redstone and John Paul Tutela (collectively, "Plaintiff Physicians") to recover alleged underpayments for medical services provided to their patient, L.P., who was enrolled in a health insurance plan (the "Plan") administered by Defendants Empire Healthchoice HMO, Inc. and Empire Healthchoice Assurance, Inc. (collectively, "Empire"). In their initial complaint, Plaintiffs brought claims under the Employee Retirement Income Security Act of 1974 ("ERISA") and New York State law, all of which Defendants moved to dismiss. The Court granted the motion, as Plaintiffs failed adequately to allege that they have standing to bring ERISA claims, and the state law claims are preempted by ERISA. Plaintiffs have moved for leave to file an amended complaint in which they re-plead their ERISA and state law claims, and they seek to add their patient L.P. as a Plaintiff (collectively with Redstone and Tutela, the "Plaintiffs"). Pls. Mot., Dkt. 33. For

the reasons that follow, the Court DENIES Plaintiffs' motion for leave to file an amended complaint.

I. **BACKGROUND**[1]

The Court assumes familiarity with the background of this case, which is set forth fully in the Court's March 5, 2024, opinion granting Defendants' motion to dismiss. *See* Opinion, Dkt. 28 ("MTD Opinion").

L.P. is a 62-year-old woman who was diagnosed with breast cancer and is a beneficiary of a health care plan administered by Empire. Proposed Amended Compl. ("PAC") ¶¶ 16–17.[2] Plaintiffs Redstone and Tutela are board-certified plastic surgeons with medical practices in New York and New Jersey. *Id*. ¶¶ 4–5. The PAC alleges that L.P. executed an assignment of benefits to Plaintiff Physicians and a power of attorney authorizing Redstone to file this action to recover benefits owed under the Plan. *Id*. ¶¶ 7, 18.

**A. Medical Care**

In March 2020, Plaintiffs performed breast reconstruction on L.P. following a bilateral mastectomy. *Id*. ¶¶ 17, 20. Prior to the procedure, Empire had authorized L.P.'s surgery. *Id*. ¶ 24. In the letter authorizing surgery, Empire warned L.P. that Plaintiff Physicians are not considered in-network and that the Physicians "could bill [L.P.] for the difference between the total amount [Empire] allow[s] to be paid and the amount [Plaintiff Physicians] charge for a service." Declaration of Frances Schultz ("Schultz Decl.") Exhibit B at 2, Dkt. 15–2. Of the $671,723 Plaintiff Physicians billed for the surgery, Empire covered $26,099.20, leaving a

---

[1] On a motion for leave to amend, courts review whether the amended complaint would survive a motion to dismiss. *See Evliyaoglu Tekstil A.S. v. Turko Textile LLC*, No. 19-CV-10769, 2021 WL 6211686, at *2 (S.D.N.Y. Apr. 14, 2021).

[2] Except where noted otherwise, the Court draws the background facts from the PAC and assumes the truth of all well-pled factual allegations.

balance due of $645,623.80.  PAC ¶¶ 26–31.  In August 2020, Redstone performed the second stage of L.P.'s breast reconstruction.  *Id*. ¶ 32.  Empire again authorized the procedure and again warned L.P. that, because her physician is out-of-network, she will be liable for the difference between what Plaintiff Physicians charge and what the Plan covers.  *Id*. ¶ 33; Schultz Decl. Exhibit C at 1, Dkt. 15–3.  Of the $138,451 Redstone charged for his services, Empire paid $7,216.77, leaving a balance due of $131,234.23.  PAC ¶¶ 34–35.  These alleged underpayments have left L.P. owing the Plaintiff Physicians the balance of the unreimbursed bills.  *Id*. ¶ 2.

### B. Insurance Coverage

Plaintiffs are out-of-network providers with Empire, which is a large health insurance company.  *Id*. ¶¶ 9–12.  According to the PAC, Empire was obligated to grant "an in-network exception" to Plaintiffs and to reimburse them in full at their billed rate for the medical services they provided to L.P.  *Id*. ¶¶ 55–57.[3]  The PAC also alleges that even if Plaintiffs were not entitled to an in-network exception, Empire was obligated to reimburse out-of-network providers based on "available data resources of competitive fees" in the area in which the services were provided.  *Id*. ¶ 59.[4]  The PAC alleges that the main source for data on such fees is the FAIRHealth databases, but, according to the PAC, Empire's reimbursement rates were far below the amounts reflected in those databases.  *Id*. ¶¶ 60–61.[5]

The PAC alleges that the medical services Plaintiff Physicians provided to L.P. were rendered outside of Empire's service area and were provided through Empire's BlueCard program, pursuant to which Empire relies upon Horizon Blue Cross and Blue Shield ("BCBS") for claims administration and processing.  *Id*. ¶¶ 62–63.  Plaintiffs allege that Empire must rely

---

[3]     The PAC does not cite to any provision of the Plan to support that allegation.

[4]     The PAC does not cite to any provision of the Plan to support that allegation.

[5]     The PAC does not allege the rates that were reflected in the FAIRHealth databases.

on Horizon BCBS's payment methodologies, and that Empire was required to pay their claims at amounts paid to out-of-network providers by Horizon BCBS. *Id.* ¶ 64.[6] The PAC alleges that BCBS "has paid substantially greater amounts for these services[7] than what was paid on these claims" and that those unspecified higher reimbursement rates "represent the reasonable and customary rates in New Jersey." *Id.*

According to Plaintiffs, unspecified provisions of the Plan and representations purportedly made on Horizon BCBS's website require: (1) Empire to pay non-participating out-of-service area providers based on the local Horizon BCBS's non-participating provider fee schedule/rate; (2) payments from Empire to be consistent with obligations imposed by local law; (3) non-participating providers to be paid using a fee schedule based on a percentage of values determined by either Medicare or FAIRHealth; (4) if reimbursement is determined using information from the Centers for Medicare and Medicaid Services ("CMS"), then the claims administrator must update such information no less than annually. *Id.* ¶ 65.

Plaintiff Physicians filed a timely appeal of the amount Empire paid for L.P.'s March 11, 2020, surgery; the appeal was unsuccessful. *Id.* ¶¶ 30–31. Plaintiff Redstone filed a timely appeal and a second level appeal regarding the amount Empire paid for L.P.'s August 17, 2020, surgery; both appeals were unsuccessful. *Id.* ¶¶ 36–38. Plaintiffs allege that they exhausted their administrative remedies with Empire and, even if they did not, they are excused from doing so because further appeals would have been futile. *Id.* ¶¶ 67–71.

---

6   The PAC does not cite to any provision of the Plan to support that allegation.

7   The PAC does not allege: when BCBS paid greater amounts for these services or how much BCBS paid for the services or to whom BCBS paid greater sums or the circumstances under which BCBS paid greater sums.

# DISCUSSION

## I. Standard for Leave to Amend

Courts must "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The permissive standard reflects the "strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (citation omitted). That said, leave may be denied for good reason, including futility. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted).

A proposed amended complaint is futile if it could not withstand a motion to dismiss. *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 165 (2d Cir. 2015). The party opposing the amendment has the burden of demonstrating that amendment is futile. *See United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 285 F. Supp. 3d 759, 766 (S.D.N.Y. 2018). In determining whether a proposed amendment is futile, the Court accepts all well-pled factual allegations in the PAC as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted). The Court is not required, however, "to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## II. The PAC Fails to State a Claim

Plaintiffs wish to re-plead their ERISA claim[8] (Count I) based on Defendants' alleged failure adequately to reimburse Plaintiff Physicians for the surgical services provided to L.P. PAC ¶¶ 72–91. The PAC asserts that L.P. has standing to pursue her ERISA claim as a member

---

[8] Plaintiffs have abandoned the ERISA claim that was in the Complaint that alleged that Empire failed to provide a full and fair review and failed to comply with applicable claims procedure.

of the Plan, and Plaintiff Physicians have standing as the assignees and authorized representatives of L.P.[9]  *Id.* ¶¶ 73–74.

Plaintiffs seek to add L.P. as a plaintiff, asserting that she indisputably has standing to pursue such a claim.  Pl. Mem. at 3, Dkt. 33–9.  Section 502(a)(1)(B) of ERISA provides that a participant or beneficiary may bring a civil action "to recover benefits due to h[er] under the terms of h[er] plan, to enforce h[er] rights under the terms of the plan, or to clarify h[er] rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  ERISA expressly provides that "a participant or beneficiary" may bring a section 502(a)(1)(B) claim.  29 U.S.C. § 1132(a)(1).  There is, therefore, no question that L.P. has standing to bring a claim pursuant to section 502(a)(1)(B).

Empire argues that even if there is now a Plaintiff with standing, the motion for leave to amend should be denied because the PAC fails to state a claim.  Defs. Opp. at 4, Dkt. 35.  Empire argues that the PAC fails to allege facts from which the Court could reasonably infer: (a) that there was no in-network surgeon available to perform L.P.'s surgery and (b) that the Plan was obligated to reimburse Plaintiff Physicians, out-of-network providers, under an in-network exception.  *Id.* at 6.  Additionally, the PAC "fail[s] to identify the terms of the Plan requiring additional reimbursements."  Defs. Opp. at 5.

Although L.P. has standing to bring an ERISA claim, the Court agrees with Defendants that the PAC fails to state a claim.  In the MTD Opinion, the Court noted that the Complaint's allegations were "confusing and conclusory."  MTD Opinion at 3.  Aside from adding L.P. as a

---

[9]  Because the PAC fails to state a claim, the Court need not analyze whether Plaintiff Physicians have standing.  The Court notes, however, that the Plan has an unambiguous anti-assignment clause, MTD Opinion at 9, and none of the cursory changes to the Complain that appear in the PAC adequately allege that Empire waived the anti-assignment clause.

Plaintiff, Plaintiffs have made no attempt to rectify the other deficiencies in the Complaint that the Court previously identified.

The PAC fails to allege a wrongful denial of benefits owed under the Plan because the PAC has not identified which terms of the Plan Plaintiffs contend entitle L.P. to additional reimbursement and has not identified the terms of the Plan that purportedly obligate the Plan to reimburse Plaintiff Physicians under an in-network exception. The PAC alleges that Empire "was obligated to reimburse authorized out-of-network physicians – such as Provider Plaintiffs – based on available data resources of competitive fees in geographic area in which the medical services are provided," and that the "main available data resource of competitive fees used by Empire and the Plan during the relevant period were the FAIRHealth databases." PAC ¶¶ 59–60. The Court highlighted the Complaint's weakness when it stated that the Complaint "does not allege the amounts reflected in the FAIRHealth databases for this surgical procedure." MTD Opinion at 3 n.5. The Complaint alleged that the "amount reimbursed by Empire for [Plaintiffs'] services are . . . far below the 85–90th percentile as represented by the terms of the Plan." *Id.* Putting aside the fact that allegation is incomprehensible, the Complaint cited no provision of the Plan that obligated it to pay at the "85–90th percentile" nor alleged to what the "85–90th percentile" refers. *Id.*

Despite being on notice of these deficiencies, Plaintiffs did not add a single factual allegation to support their conclusory and incomprehensible allegations. The PAC: never alleges what the FAIRHealth database considers a competitive fee for the surgical procedures at issue; fails to cite the provisions of the Plan on which the Plaintiffs are relying; and fails to clarify to what the "85–90th percentile" refers. *See Park Ave. Aesthetic Surgery, P.C. v. Empire Blue Cross Blue Shield*, No. 19-CV-9761, 2021 WL 665045, at *8 (S.D.N.Y. Feb. 19, 2021).

The factual basis for Plaintiffs' claim that they are entitled to an in-network exception for reimbursement appears to be their *ipse dixit* assertion that there were no in-network providers who could perform L.P.'s surgeries. But that allegation is both conclusory and implausible. Although the PAC alleges that "the plan did not provide an in-network microsurgeon option at St. Michael's Medical Center," PAC ¶ 66, it includes no facts from which the Court can plausibly infer that L.P.'s surgery had to occur in St. Michael's Medical Center. The PAC does not allege – even in a conclusory way – that there were *no* in-network microsurgeons capable of performing L.P.'s surgery anywhere in the New York Metropolitan area.

Courts in this Circuit have dismissed claims that fail to identify the provision of the applicable plan documents that allegedly entitle the plaintiff to the relief sought. *See Pro. Orthopaedic Assocs., PA v. 1199SEIU Nat'l Benefit Fund*, 697 F. App'x 39, 41 (2d Cir. Sept. 6, 2017) (concluding plaintiff failed to state a plausible claim for relief under section 502(a)(1)(B) where the complaint alleged that the defendant, was required to pay the "usual, customary and reasonable rates" for services rendered by out-of-network providers but "fail[ed] to identify any provision in the plan documents requiring the Fund to pay such rates"); *Anjani Sinha Med. P.C. v. Empire HealthChoice Assurance, Inc.*, No. 21-CV-138, 2022 WL 970771, at *3 (E.D.N.Y. Mar. 31, 2022) (dismissing section 502(a)(1)(B) claim that alleged the defendant was required to pay the "usual and customary health care costs incurred" by the patient but did "not reference any plan provisions at all" requiring the defendant to pay such rates); *Long Island Neurological Assocs., P.C. v. Empire Blue Cross Blue Shield*, No. 18-CV-3963, 2020 WL 1452521, at *5 (E.D.N.Y. Mar. 2, 2020), report and recommendation adopted, 2020 WL 1452465 (E.D.N.Y. Mar. 25, 2020) (dismissing claim for "full payment under the terms of the [p]lan" because the plaintiff "fail[ed] to point to a [p]lan provision that requires the relief sought, i.e., payment in full"). Although Plaintiffs assert that they have provided "more than enough to plead an ERISA

benefits claim at the pleading stage," Pl. Reply at 7, Dkt. 40, they fail to explain why they should be excused from pleading the particular Plan provisions on which they are relying. In a footnote of their reply brief, Plaintiffs state that "the Plan is incorporated by reference into the PAC since it is referred to throughout the pleading[.]" *Id*. at 3 n.4. Although the Court concurs that the Plan is incorporated by reference into the PAC, that does not alter the outcome here. It is not the Court's responsibility to go in search of the Plan terms on which it thinks Plaintiffs might be relying. Plaintiffs have the Plan documents (they were submitted by Defendants in connection with their motion to dismiss, Schultz Decl. Exhibit A, Dkt. 15–1); they have no excuse for not citing to the particular Plan provisions on which they are relying.

In short, although L.P. has standing, the PAC does not state a claim under section 502(a)(1)(B) of ERISA.[10]

### III.   Plaintiffs' State Law Claims Were Previously Dismissed With Prejudice

The PAC asserts five state law claims related to the Plaintiffs' ERISA claim: breach of contract (Count II), breach of implied contract (Count III), unjust enrichment (Count IV), tortious interference (Count V), and breach of contract (Count VI). PAC ¶¶ 92–126.[11] The MTD Opinion held that Plaintiffs' state law claims are expressly preempted by ERISA, as "they are not independent of the terms of the relevant ERISA plan." MTD Opinion at 12.

Plaintiffs maintain that if the Court determines that Plaintiff Physicians do not have standing under ERISA, then the state law claims are not preempted, and Plaintiff Physicians have standing to assert those claims. Pl. Mem. at 9–11. The Court dismissed Plaintiffs' state law claims *with prejudice* in the MTD Opinion. MTD Opinion at 13. Dismissal with prejudice is

---

[10]   Because the Court has determined that the PAC fails to state a claim under ERISA, the Court need not address Empire's argument that Plaintiff L.P. failed to exhaust her administrative remedies.

[11]   Plaintiffs misnumbered the paragraphs of the PAC. What the Court considers ¶ 126 is mistakenly labeled in the PAC as ¶ 111.

appropriate where "[t]he problem with [plaintiff's] causes of action is substantive" and amendment would be futile. *Owoyemi v. Credit Corp. Solutions Inc.*, 596 F. Supp. 3d 514, 521 (S.D.N.Y. 2022) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). The Court already determined that Plaintiffs' state law claims cannot be cured by amendment. ERISA preempts state laws that "provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee," as well as claims that "do not attempt to remedy any violation of a legal duty independent of ERISA." *Paneccasio v. Unisource Worldwide, Inc.,* 532 F.3d 101, 114 (2d Cir. 2008) (citation omitted). Preemption is effective regardless of Plaintiffs' ability to sue under ERISA.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to amend the complaint is DENIED. The PAC fails to state a claim under ERISA, and the state law claims were already dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the open motion at docket entry 33 and close the case.

**SO ORDERED.**

Date:  December 13, 2024                                          **VALERIE CAPRONI**
        New York, New York                           **United States District Judge**